Good morning, and may it please the Court. I'm Dan Lindahl, appearing for the appellant, Metropolitan Prop. & Cas. Ins. Metropolitan challenges the District Court's order applying a 2.0 multiplier to the approximately $502,000 and a total fee award of approximately $1.1 million in this case in which the plaintiff recovered $198,000 in damages. The total damages are considerably more, right? But there was a large offset because the insurance company had paid part of the loss already, right? Well, I... Right. Yes, there had been nearly a million dollars in payments from the insurance company, of which I think about $347,000 pertained to damage to the dwelling itself, and then there were other payments. Yes, that's correct. Okay. So here's the way I look at this, and I would like your help if I could get it, please. I've got The way I break this down, there are four components to this number, and the numbers are a little wobbly, so I need a little help. Sure. So first, there's an amount from January 4, 2012, the date the plaintiff retained her lawyers, through February 3, which is the day before defense counsel showed up, okay? And the judge drew a line in the sand there. That's the first part. Mm-hmm. The second part is the amount of fees incurred from the day which the defense lawyers showed up until the verdict, right? Right. And that was doubled. Correct. Right. Then there's the amount, the third component is the amount incurred to, basically, for plaintiff's fee bill. Correct. And then there's the reply brief. Correct. Right? Okay. So there's a problem, I think, in the first two components. Your brief says that the correct amount for the first category must be $76,000, 452.50, Metropolitan understands and agrees. Oh, do you agree on that first component? I don't know where the number comes from, but you seem to both agree. If you both agree, I'm happy. I believe we both agree. It took some time to figure out exactly, to the penny, what the numbers were. I believe there's an error in the district court's opinion. In the context of this case, it's infinitesimal, really. Okay. So I'm just going to ask you both if you both agree on that first component, because I can't figure out where it came from. It took me a long time. Okay. And then, not to belabor this, but then on the second component, I think it's supposed to be $869,452, not $869,542. In other words, I think there's just somebody typoed and transposed two numbers. But if I correct all of those things, then I get to $1,081,370.50. What — I also — I struggled with the numbers. The way I put it in my brief is how I finally ascertained it. I think there is, as you say, there's a transposition in the district court's opinion. I sorted it out. I think the way it's set out in my brief is accurate, and I don't believe Mrs. Back contests. You'll have an opportunity. We are now down to the pennies, and that's enough on that. But breaking it down in those four categories might be helpful, because for me the most problematic category is the third. And for my part, I'd like to hear about the third. And that has to do with the multiplier as to the first part of the fee bill, generating the fee bill. Do you want to speak to that? Well, sure. You know, the interesting part about the fee bill and the point we try to make in the brief is, you know, it sort of lives — it's — obviously, it's after trial. None of the conduct that the trial judge identified as warranting this sanction, and that's what we think it is, pertained to any of the work that they had to put in preparing their fee bill, and yet he just doubled it. I don't — it's untethered to any conduct that even if that — any of that conduct justified doubling it. And, you know, under Oregon law, there's this — this rational nexus requirement that we talk about at — you know, repeatedly, that — where the amount of the enhancement must be related to the predicate acts. Right. But why isn't it — why isn't it baked in? If the judge found — and the judge has a lengthy order here documenting why the judge thought that the conduct was unreasonable on repetitions and used a lot of adjectives and a lot of examples. So setting that aside, right, then why isn't it baked in to the — to the project that it took to generate the fee bill? You have to retrace all the same conduct, don't you? Well, no, because what's baked in is to the extent any of this, you know, inappropriate conduct led to extra work for — It's baked in the lodestar. It's baked in the lodestar. They got paid every hour and every minute at the rates they requested. And the — and the trial judge doesn't pretend otherwise. He doesn't say otherwise. This is — and this is what — I think I understand this part. Yeah. Can I go into my next question for some of my colleagues? I'm sorry. How much money are we talking about in terms of the fee aspect of this? The — The $100,000? I mean, give me the number. The numbers are these. The plaintiff was awarded $578,000. No, no, no. Just the fee part. The fee on fee part. How much was that? Oh, $502,000, Your Honor. That was 500 — Oh, the fee on fee. I'm sorry.  It's — it was $67,000. That's $67,000. To prepare the fee petition and then another $20,000, $21,000 or something for the — How much money are we talking about realistically? $60,000, $70,000, $80,000 that you complain about? It's around — it's around $80,000. Well, wait a minute. No. Forgive me, but on the third component, which is what I'm talking about, to generate the fee bill, I think it was $41,000, and that was doubled. Well, that — So that's a $41,000 difference, and then on the reply brief, that's another $26,000. Okay. If — So we're here about roughly $70,000. On that piece. On fees on fees. On that piece. But you're also talking about the multiplier as well, right? Well, that's — yes. That's the focus of the appeal, is the district court's unprecedented application of a multiplier to — as a punitive sanction, not as an award of reasonable attorney fees, but as a punitive sanction against the — So if we agree with you, we're talking about roughly about $70,000. No, Your Honor. We're talking about $502,000. No, no. If we agree with you on the fee-on-fee aspect — Yes. On the fee-on-fee. We're talking about $70,000 out of the total of the $500,000, whatever that was doubled. Okay. Something like that. I just want to get a perspective. Sure. Sure. Sure. So, counsel, just so I understand your argument, do you take issue as a matter of principle with the authority of the district court to apply a multiplier generally? No. Okay. So in this case, your argument is that, if I understand you correctly, that the district court applied the multiplier not as part of the fee award, but as a sanction, a punitive sanction. Is that your argument? Well, my argument — that is part of the argument. That explains why the judge did what the judge did, and it explains why the judge is unable to articulate a rational basis for why a $502,000 enhancement was — is reasonable. Because, of course, the touchstone here is reasonableness. Counsel, your time is ticking. Yes. There's 16 factors the judge had to take. That's what the statute requires. Mm-hmm. Two statutes, I should say. What's wrong with that? What did the judge do wrong? What's wrong with that is that, first of all, the judge relied on the very same factors that he used to get to the Lodestar fee to then say, and I'm going to add another $502,000, and he didn't explain, even though it's required by Oregon precedent, where does the $502,000 come from, other than just saying, I'm going to double it. How did the — how is $502,000 rationally related to any reasonable fee necessitated by any conduct that — Well, the judge did write a 56-page opinion. He did. And that's very unusual in dealing with these fee situations. We don't want to encourage collateral litigation when it comes to fee awards. But I'm struck, quite frankly, here with the comment that the judge made when he said, I note that Metropolitan has sought reconsideration, sometimes more than once, of virtually every procedural discovery and substantive ruling for the court that the court has made in this case. Now, look, we're sitting here as an appellate court. I'm a little sensitive to district court judges, I'll confess, right? But we sit there, and if we're going to write a 56-page opinion on a fee case, we really should, you know, really impose upon the exercise of the district court's discretion who has sat through this mess from day one. Do you think that we should really do that? Well, of course I do, because you mentioned the extraordinary 56-page opinion. It's also extraordinary, in fact, there is nothing like this where a trial court has awarded, you know, $500,000 in an enhancement based on its dissatisfaction with the representation in the courtroom. So the case comes with a lot of hair. And I think we have to give some deference to the district court's judgment. The district court sat on this thing for years. Let me ask you this question. If I understand the law correctly, if you're not successful in this appeal, your adversary can also get fees paid for the time it took for him to handle this appeal, correct? I believe that's correct. So is that going to be a decision that the district court judge would make, or should we make it? I believe the fees on appeal is a matter that goes back to the district court. Goes back to the district court. Could the district court have the discretion to apply a multiplier on those fees? I suppose it has as much discretion as it does in any other context, yes. Do you think the district court would be incorrect in even considering a multiplier on the calculation of the fees for the appellate litigation? Adamantly. As a matter of law, could not consider a multiplier? No, he can consider it, but he would be wrong to apply it. What would be the factors that would have to be considered by the district court in assessing what the fees ought to be for the appeal? What would be the factors? Yeah. The complexity of the appeal, the effort devoted to it, the hours devoted to it, the reasonable hourly rate. Is that the same standard that should apply on the fee of fee $70,000 factor as well? Why would this be different than what you're complaining about here in terms of multiplying the amount of time and money expended to submit the fee application? Well, the multiplier has to be justified by something beyond what the reasonable fee is based on, you know, the Supreme Court. How would the justifier get based upon taking a frivolous appeal? Would that be an appropriate factor for the district court judge to consider if it was appropriate in a given case? In an appropriate case, sure. And the district court judge would be the best person to make that judgment, I suspect, right? Whether this was a frivolous appeal? Well, based upon the totality of the case? No. I don't think he would be the best person to decide whether this was a frivolous appeal, because it's not. Who would be? Who would be? I think this Court would be. Okay. Counsel, what's the appropriate standard of review? Excuse me? What's the appropriate standard of review? Well, the appropriate standard of review is abuse of discretion. However, in a, you know, incorrect application of law is, of course, always an abuse of discretion. Is it your position that he made an error of law? It's my, certainly he made an error of law in awarding a multiplier that is in no way related. So you keep giving me that conclusion, and forgive me, but you're down to two minutes. Right. So as concisely as possible, point me, please, to what is his error of law? His error of law was applying, was using factors subsumed in the lodestar to award a multiplier and in not, in awarding a multiplier that is not related to the predicate acts, the amount of the multiplier is not related to the predicate acts that he identified as the basis for the multiplier. The latter point you make several times in your briefing, and I see it in Oregon case law. Can you tell me what exactly you think that means? What does Oregon law require when it says there needs to be this nexus? Well, it means that there needs to be, the judge needs to be able to explain this amount of fees, whether it's an enhancement or a reduction, makes, is tethered to, it makes sense and it flows from what we identify. You're just giving me the definition of nexus, but apply it to a fees award, because what he's got is 50, I think, six pages of episode after episode where he found the conduct was unreasonable, the positions taken were unreasonable. How do you, what did you want him to do to tie that? Did you want it mathematically tied, or what is it you're suggesting? I don't think he can do it in this case. He, he's already. Would it be impossible to award an enhancement in this case? I don't think, no, an enhancement in this case isn't justified. I'm down to 38 seconds, so. All right, counsel, we'll give you a minute for rebuttal. Good morning, counsel. Good morning, Your Honor. May it please the Court, my name is Margaret Schroeder. I represent Plaintiff Appelli Lucille Beck. The question before this Court is whether the district court abused its discretion when it determined, based on all of the facts and circumstances of this case, and the totality of the criteria prescribed in ORS 20075, that a reasonable fee under ORS 742-061 should be calculated by applying a 2.0 multiplier to a portion of the attorney fees incurred by Mrs. Beck. As the district court's detailed 56-page decision makes clear, the district court carefully and correctly applied those 16 factors listed in ORS 20075. Let me interrupt you and ask you the same question that strikes my curiosity. If you're lucky enough to be successful in this appeal, if the good Lord shines on you and you're lucky enough to be successful, and you're going to want to get paid for writing the brief and for coming before these wonderful judges and speaking the way you're speaking, and you're going to ask for fees, I guess. As a matter of law, could the district court give a multiplier for this aspect of the litigation? Absolutely, Your Honor. And what standard would the district court have to embrace in order to do that, just limited to the appeal? I believe the court would have to, again, look to the 16 factors in ORS 20075. Well, but we're only talking about an appeal, writing a brief, and coming in orally arguing. So those 16 factors may or may not be terribly relevant for a pristine, you know, aspect of the litigation. Respectfully, I disagree, Your Honor. I believe the factors are relevant in this case because a good deal of the time spent in responding to appellant's opening brief and preparing for the argument today was tracing down did the district court actually make an error. You have to go back to the beginning. It's all part of the gestalt, so to speak. You can't really separate off the parts. And the same thing, I guess, applies to your fee-on-fee situation. Yeah. And I want to correct one mathematical issue. I believe one of the questions was if this court decides that the district court should not have applied a multiplier to the fees-on-fees, that's only a $41,000 difference. I think it's about $70,000 or something like that. Well, it was $41,000, and then it was doubled. It was doubled, right. So we should still get the fees for applying. And I — Could I clarify that? Because I would like to get your response on that. I told you that I've had this broken into four components. And it seems to me that the reply brief where you incurred — your client incurred $26,000 in fees fits because your response is that the opposition to the fees motion was unreasonable. I'm going to summarize it that way. But what about the third component? That's your toughest part, and his argument is that even if our litigation conduct was unreasonable and we re-litigated and so on and so forth, that you're adequately compensated for preparing the fees petition, because it's baked into the number of hours that you charge for it. Well, one of the 16 factors that the court can look at is whether the parties were objectively reasonable in pursuing settlement of the case. We put in the record in — I can't remember if it was in our motion or in our reply — copies of all of the settlement negotiations that we had with Metropolitan, including an offer right after trial. So would that offer have included an offer that pertained to fees? I'm not following you. Sorry. I'm not getting to the point quick enough. We offered — in lieu of preparing the attorney fee petition, we offered to Metropolitan, here's our fees, just pay it, we'll save the money in incurring and briefing and — I'm just curious. Do you think your client contributed in any way to the fact that this became a fare-thee-well and it was such a litigated case? Was there sort of bad blood on both sides? I'm trying to put myself in the shoes of the district court as to what happened here. Well, unlike the Precision Seed case in which the district court in that case found that both sides were at fault, the district court did not find that in this case. Throughout the district court's decision, the judge notes that Mrs. Beck approached this case simply and it was a one-off breach contract case. It shouldn't have taken this much. That is the good news. If this case wasn't litigated the way it's been litigated, you wouldn't have had the pleasure of coming here and arguing before this distinguished panel. I agree with that. This is a privilege. I would like to address a couple of the arguments that Metropolitan made in its reply brief. The first one is this issue of a nexus. And actually, just now, counsel for Metropolitan argued that the district court did not adequately describe what that nexus was. But I disagree. It's on ER 46, page 46 of the district court's decision. And in that decision, the district court wrote, Beck argues that a multiplier of 2.0 should be applied due to the nature of this case and the conduct of Metropolitan and its counsel. The court agrees, as explained and supported herein, that a 2.0 multiplier is appropriate to apply to the fees Beck consequently incurred in the litigation. The district court then goes on to explain why it only applied a 2.0 multiplier to the fees that were incurred by Beck after Metropolitan's counsel became involved in the case. And that — and I think that is the rational nexus that the court actually included in its decision. But it doesn't — but it didn't quantify the two-time multiplier. I mean, why two — in other words, that's his argument. That's one of his stronger arguments. Why two times? Why not, you know, some other multiplier, right? Well, that's certainly up to the district court's discretion. There are cases in Oregon in which counsel have requested and been awarded 1.6, 1.7, 2.0. I saw one case in which counsel requested a 3.0, but that was denied. So what we have is we have a requirement out of Oregon law that we look for this nexus, and then we have an abusive discretion standard of review. Hence, you understand why we're trying to make sure there isn't an error of law. Right. Right. What about his argument that there was an error of law because the judge double-counted some of the same factors? I don't think that's the case. What the court did in its decision was it looked at — in determining the load star, determined the rate of — the hourly rate was reasonable, and the hours were reasonably incurred to come up with the load star. That — then the court looked at — That's not challenged. The load star is not challenged here. The load star is not challenged. That's correct. Okay. But then in determining the — what an appropriate award of a multiplier would be, the court looked at the factors in — I'm going to pull out my chart. In 2007-5 sub 1, subsections A, C, D, E, and F all go to the conduct of the parties and their counsel in litigation. And that is what the court clearly tied the multiplier to, was the conduct. I mean, it's replete throughout the decision. And this is supported by the Oregon case of Migas. In that case, the trial court granted a multiplier based on several factors, including to deter others from engaging in objectively unreasonable conduct. Now, in that case, the court of appeals had reversed the general judgment, and so it had to remand the determination of the multiplier back to the trial court. But in its guidance, when it opined — the court of appeals opined to the trial court, here's what you need to consider, the court of appeals did not say that the last factor cannot be considered, that a deterrence. And that's baked right into the ORS 2007-5 factors. This all resulted from a residential fire, a home fire. Yeah, a Christmas tree fire. Was there ever a question about whether the house was going to be repaired or replaced? Well, that was an issue that Metropolitan kept trying to bring up in the trial court, but it doesn't really matter because Mrs. Beck's policy, she could recover the actual cash value of the house, which is replacement cost minus depreciation. So she could take a lesser amount and use that for anything. There's nothing prohibiting her from doing that. But if she decided to rebuild and she had certain timelines in which she had to do so, then she could recover that depreciation. Exactly. And so why wasn't that a fair argument for them to be trying to quantify in the course of litigation, the difference between what it would actually cost if she ultimately chose to repair or replace versus what they would have owed her if she had not? I don't think that the — well, the difference is the amount of depreciation. Yeah, I understand that. I'm trying to figure out why you thought it was an unreasonable litigation tactic for them to pursue that line. Well, the line that they were pursuing was that because Mrs. Beck was not going to repair her home, therefore that somehow affects the value. That wasn't the issue. The question before the jury was the RCV and ACV. The value, the overall value. And so whether she rebuilt or not, it was immaterial. Yes, well, for the trial it was immaterial. For the trial. But it wasn't ultimately necessarily going to be immaterial to them. That's what I'm trying to get at. Do you think it was really outside the boundaries of what was fairly — the discovery, for example, that was fairly conducted? Yes, because the discovery wasn't limited to whether or not she was going to rebuild. And Mrs. Beck, she was elderly and, frankly, she couldn't make up her mind whether she wanted to rebuild. Is she alive today? She is. She's 92. 92? She turned 90 right after the trial. Where is she now? In a nursing home. There she is. Yeah. Assisted living. I also want to address the argument. They make an argument under the Morrow case. They argue that the Oregon Supreme Court said in Morrow that a multiplier should not be based on factors already considered in setting the Lodestar fee. But that's not what Morrow says. In Morrow, the Oregon Supreme Court said, in this case, we place greater weight on the risk of nonpayment. They didn't say they didn't place any weight on it. The court needed to consider all 16 factors when deciding how much a multiplier, right? Correct. Yeah. Okay. Yeah. I also want to, this goes to the claimed error of law that Metropolitan claims the district court made, which was the Strachan Court of Appeals case. Metropolitan argued that Strachan supported their argument that the deterrent factors in 2007-5 sub 1 C and D should not be considered by the district court. And that's not what Strachan says. Well, first, it's contrary to the express language of the statute, which says you have to consider all of the factors in subsection 1 and subsection 2. But in Strachan, and now I've lost my place. Oh. In Strachan, the Oregon Court of Appeals quoted all of the factors in subsections 1 and 2 and then said, we do not find that the factors set out in subsection 1 affect the amount of the fee-shifting award. The criteria in subsection 2, however, are material, and we turn now to the application of those factors. But that doesn't mean that, I think what that means is that Strachan, just in that particular case, decided that the subsection 1 factors weren't relevant to the facts of that case. And I'd want to point out that the same Oregon Court of Appeals issued another decision called Grisby v. Progressive Preferred Insurance Company on January 6, 2010, which was just 21 days before the Oregon Court of Appeals decision in Strachan. And Grisby doesn't say that the subsection 1 factors are not to be considered. In fact, the Oregon Court of Appeals remanded the case to the trial court for reconsideration of one of those subsection 1 factors. So there simply wasn't an error. I think I've hit all of my points. Is there any further questions? Thank you very much. Thank you, counsel. Rebuttal, one minute. The only point I want to make here in the minute I have, and this goes to the standard of review, I think, because where there are legal and factual errors, there's no discretion. Those are errors that undermine the court's decision. And we lay out in the brief several legal and factual errors that the district court made and assessed to Metropolitan positions Metropolitan didn't take, arguments Metropolitan didn't make, and says this justifies a multiplier. I'm not going to go through them in the 31 seconds, 30 I have here, but I do want to draw the Court's attention to those, because, again, there's no discretion to make legal and factual errors as a justification for a multiplier. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the Court.
judges: Rawlinson, Christen, Block